**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| TARA LEIGH PATRICK A/K/A CARMEN ELECTRA; AND CIELO JEAN GIBSON, <br><br> Plaintiffs', <br><br> - against - <br><br> KHG OF SAN ANTONIO, L.L.C. D/B/A TIFFANY'S CABARET <br> Defendant. | Case No.: 5:18-cv-00910 <br><br><br> **COMPLAINT** <br><br> (Jury Trial Demanded) |

Plaintiffs, TARA LEIGH PATRICK a/k/a CARMEN ELECTRA and CIELO JEAN GIBSON, ("Plaintiffs"), by and through their undersigned counsel, as and for their Complaint against Defendant KHG OF SAN ANTONIO, L.L.C. D/B/A TIFFANY'S CABARET ("Defendant" or "Tiffany's Cabaret"), respectfully allege as follows:

## BACKGROUND

1.     This is an action for damages and injunctive relief relating to Defendant's misappropriation and unauthorized publication of images of Plaintiffs, who are world-renowned professional models, in order to promote its strip clubs, Tiffany's Cabaret (collectively "Tiffany's Cabaret" or "Defendant").

2.     As detailed below, Defendant's unauthorized use of Plaintiffs' images, photos, and likenesses (collectively, "Images") constitutes, at minimum: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1)(A) and (B), which prohibits false or misleading use of a person's image for purposes of advertising; b) violation of violation of Plaintiff's right to privacy, which protects a person's right to privacy and publicity; c) defamation, and; d) supplants

various common law torts.

3.     In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seeks an Order from this Court permanently enjoining Defendant from using her Image to promote Tiffany's Cabaret, via any medium.

## JURISDICTION & VENUE

4.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs has stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1)(A) and (B).  This Court also has subject matter jurisdiction the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

5.     As set forth immediately below, Plaintiffs TARA LEIGH PATRICK a/k/a CARMEN ELECTRA and CIELO JEAN GIBSON are, and at all times relevant to this action have been, professional models.

6.     According to publicly available records, Defendant KHG OF SAN ANTONIO, L.L.C. d/b/a TIFFANY'S CABARET is a Limited Liability Company organized and existing pursuant to the laws of the State of Texas doing business as a strip club in San Antonio, Texas under the name Tiffany's Cabaret at 8736 Wurzbach Road San Antonio, Bexar County, Texas.

7.     Venue is proper in the United States District Court for the Western District of Texas because Bexar County is the principal place of business for Defendant.

8.     All parties have minimum contacts with Bexar County, a significant portion of the alleged causes of action arose and accrued in Bexar County, Texas, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Bexar County.

## PARTIES

*Plaintiffs*

9.     Plaintiff TARA LEIGH PATRICK a/k/a CARMEN ELECTRA, is an individual residing in the State of California.

10.     Plaintiff CIELO JEAN GIBSON is an individual residing in the State of California.

### *Defendant*

11.     According to publicly available records, Defendant KHG OF SAN ANTONIO, L.L.C. d/b/a TIFFANY'S CABARET is a Limited Liability Company organized and existing pursuant to the laws of the State of Texas doing business as a strip club in Bexar, Texas under the name Tiffany's Cabaret at 8736 Wurzbach Road San Antonio, Bexar County, Texas.  It may be served with process by serving its registered agent, Timothy K. Eidson, at 9440 I.H.-10 West San Antonio, Texas 78230.

## FACTUAL ALLEGATIONS

12.     As set forth immediately below, Plaintiffs are well-known professional models who earn their livelihood modeling and selling their identity, image and likeness (collectively "Images") to companies, magazines, and individuals for the purpose of advertising, endorsing, or promoting products and services.

13.     Tiffany's Cabaret's misappropriated Plaintiffs' images and likenesses and the repeatedly published of them in a defamatory manner.  Tiffany's violations are ongoing.

14.     There is no question that Tiffany's Cabaret or parties acting on its behalf misappropriated the images and likenesses of the Plaintiffs for the purpose of using the value of the Plaintiffs' Images for the value associated with them.  Plaintiffs are internationally known for

- 3 -

gracing the covers of countless mainstream publications in addition to having careers in television and film.  All of the Plaintiffs are easily identifiable at a glance.  Moreover, Tiffany's Cabaret undoubtedly received a benefit from its unauthorized use of the Plaintiffs' Images.  The Plaintiffs have suffered damages as a result of Tiffany's conduct.

15. Cielo Jean "C.J." Gibson is an American model who enjoys great success in her industry. Ms. Gibson was the *Import Tuner* Magazine Model Search winner. Ms. Gibson is currently a model for the Falken Drift Team, and can be seen at Formula Drift events. Ms. Gibson has also appeared in several magazines including *FHM*, *American Curves* (as a cover model), *Supreme*, *MuscleMag International, Muscle & Fitness, Teeze,* and in a Bowflex ad. Ms. Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida and currently models for Body Glove. Ms. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Ms. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing.

16.    Tiffany's Cabaret misappropriated Ms. Gibson's Image and placed it on social media posts for Tiffany's Cabaret, a sexually-oriented business, beginning on or around January 18, 2017, for the club's "The Big Game Party", enclosed as **Exhibit A** to the Complaint. The Image depicts Ms. Gibson in a pair of short shorts and a half shirt holding a football and promoting the event in addition to drink specials from open to close.  The image of Ms. Gibson was deliberately positioned to imply that she was a stripper working at the club or that she endorsed the club.  The image was used without the permission of Ms. Gibson and is defamatory on its face.  The image was circulated via print and via social media on many occasions by

Tiffany's Cabaret.

17.     Tara Leigh Patrick a/k/a Carmen Electra is an actress, recording artist, and entrepreneur. With an impressive body of work that encompasses dance, television, film, comedy and theatre, Carmen Electra has quickly emerged as one of Hollywood's most versatile personalities. Growing up, Ms. Electra attended Cincinnati's School for Creative and Performing Arts. She always knew she was destined to be an entertainer. It was after graduating high school in 1991 that Ms. Electra moved to the City of Angels and caught the eye of Prince, who would go on to produce her self-titled album on his Paisley Park record label. Ms. Electra ultimately ventured into acting with regular roles on *Baywatch* and the MTV's *Singled Out*. Ms. Electra has since made the move to the big screen with starring roles in blockbuster hits including *Scary Movie*, *Dirty Love*, *Cheaper by the Dozen 2*, and *Meet the Spartans*. Ms. Electra won the role as the face of MAX Factor following in the famous footsteps of Marilyn Monroe and Jaclyn Smith. Electrifying, intoxicating and firmly in control, for two years Ms. Electra brought the high-glam attitude of the MAX Factor line to life with style and sensuality. In 2006, Ms. Electra became a published author with the release of her book, "How to be Sexy." She also formed a dance troupe, The Bombshells, who perform nationwide, and she recently released the fitness DVD series, *Carmen Electra's Aerobic Striptease*. In 2009, Ms. Electra appeared live on stage in MGM Grand Vegas' Crazy Horse Burlesque Show to sold-out audiences during the summer and fall of the year. In 2010, Carmen starred in the film, *Oy Vey, My Son is Gay*. Most recently, Ms. Electra starred in the film *2-Headed Shark Attack*, alongside Charlie O'Connell, served as a guest judge on *Britain's Got Talent*, and made reoccurring guest appearances on CW's hit show, *90210*. In November of 2012, Ms. Electra released her return-to-music single, "I Like it Loud," featuring Grammy-nominated producer Bill Hamel. The single, which delves into Electra's fun

and playful side, marks 20 years since she first busted onto the Hollywood circuit as a pop artist discovered by music legend Prince. "I Like It Loud" hit the #25 spot on Billboard's Dance Club Play Chart and from there, the sultry songstress was on fire, turning up the heat for audiences everywhere, including *The Wendy Williams Show*, Cyndi Lauper's *Home For The Holidays* charity event, the notorious White Part in Palm Springs, and most recently, Life Ball in Vienna. In June of 2014, Ms. Electra released 'Werq', which was followed by the release of a music video. This club anthem is all about woman empowerment and the dynamic music video embodied that vision. Now, the electrifying vixen is back with her hottest single yet, 'Around The World'. As a "Thank You" to her global supporters. Carmen released the energizing track in November. The single invites her fans from all corners of the globe to join her and get lost in her music. She will be releasing more music and touring America in 2015. Ms. Electra partnered with Fleshlight to create her own line of personal lubricants geared towards women in August of 2015. In November 2015, Ms. Electra performed a few of her hits in Russia at the "Favourites of the Moon" festival. During that same month, Ms. Electra launched her new perfume, "Carmen Electra", with FragranceNet. Ms. Electra can most recently be seen as the host of WEtv's new reality docuseries "Ex Isle" which premiered January 8th, 2016. She has 3.1 million Facebook followers, 823k Instagram followers, and 364.1K Twitter followers.

18.     Tiffany's Cabaret misappropriated Ms. Electra's Image beginning on or about August 4, 2016, and placed it on several postings on its social media and Internet sites, enclosed as **Exhibit B** to the Complaint. All of the images were promotions for Tiffany's Cabaret, a sexually-oriented business.  The images include pictures of Ms. Electra in a pink bikini and heels dancing around a pole with a caption for "$10 Tabledances (sic) 8pm-Close". The images of Ms. Electra were deliberately positioned on the promotional materials to imply that she was a stripper

- 6 -

working at the club or that she endorsed the club.  The images were used without the permission of Ms. Electra and are defamatory on their faces.  The images were circulated via print and via social media on many occasions by Tiffany's Cabaret.

19.     None of the Plaintiffs consented to Tiffany's Cabaret's use of the images.  The Plaintiffs are all talented, highly successful models who earn substantial amounts of money by promoting and protecting their images and likenesses to various clients and take great pride in their reputation in their industry.  It is common knowledge that any improper or unauthorized use of their images or likenesses will substantially injure their careers.

20.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they choose to model.

21.     Plaintiffs' Images were misappropriated, by the Defendant in order to make it appear that they worked at, promoted, or endorsed Tiffany's Cabaret.

22.     In the case of each and every depiction featuring Plaintiffs' Images, such appearances were false.

23.     Moreover, in each and every case, this misappropriation occurred without any Plaintiffs' knowledge, consent, or authorization and at no point did Plaintiffs ever receive any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images has caused Plaintiffs to suffer substantial damages.

24.     That we know of, Plaintiffs were depicted in social media, website, and other Internet posts in order to promote Tiffany's Cabaret.  These posts were intentionally designed to

make it appear that Plaintiffs are either strippers working at Tiffany's Cabaret, promoted Tiffany's Cabaret, or endorsed the club.

25.     No Plaintiff has ever been employed at Tiffany's Cabaret or any other sexually-oriented business and has never (and would never) agree to sign away her Image rights to be used in any way that affiliates her with Tiffany's Cabaret.

26.     Plaintiffs have never been hired to endorse Tiffany's Cabaret, have received no remuneration for Defendant's unauthorized use of their Images, and have suffered, and will continue to suffer, damages as a result of Defendant's use of their Images.

### Ownership of Images

27.     All Plaintiffs have reviewed the imagery in question and have positively identified themselves as the models depicted in the doctored internet and social media posts used by Defendant Clubs to market and promote the Clubs.  As described more specifically for each Plaintiff above, some of the photographs used to create the strip club advertisements were taken professionally and a release was signed at the time of the photo shoot.  However, no Plaintiff ever released her Right to Privacy, Publicity, or the right to any third party to sell her image to any third-party not a party to the original release without her permission.  No Plaintiff ever agreed to promote a strip club via the imagery taken by Tiffany's Cabaret.

28.     Additionally, if any release was signed, it did not give any person rights to use the photographs into perpetuity.  The industry standard varies, but a model rarely, if ever, signs a release of all rights into perpetuity for the use of her image.  Moreover, if a release was signed, it did not include a release of the Plaintiffs' publicity rights and, in fact, several of the releases specifically stated that Plaintiffs retained their right to publicity.  The right to a person's image and likeness is not copyrightable and, therefore, Plaintiffs are not asserting copyright claims.

29.     Moreover, as described more specifically for each Plaintiff above, some of the photographs were taken as "selfies" and are therefore fully owned by the individual Plaintiff or they were taken for personal use in an individual Plaintiff's portfolio in order to allow her to market herself to new clients.  In these cases, no release was signed and no copyright interest was asserted.  In these cases, as above, each Plaintiff fully retained her right to publicity and privacy and in no case did any Plaintiff ever agree, nor did any third party hold the right to agree on her behalf, that Defendant could use her image and likeness in order to market, promote, or endorse their strip clubs.  Based on these rights, Plaintiffs assert the Causes of Action described below.

### Defendant's Business

30.     Upon information and belief, KHG OF SAN ANTONIO D/B/A TIFFANY'S CABARET operates a strip club under the name Tiffany's Cabaret that engages in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

31.     KHG OF SAN ANTONIO D/B/A TIFFANY'S CABARET does this for its own commercial and financial benefit.

32.     KHG OF SAN ANTONIO D/B/A TIFFANY'S CABARET has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that Plaintiffs either worked as strippers at Tiffany's Cabaret, promoted Tiffany's Cabaret, or endorsed Tiffany's Cabaret.

33.     KHG OF SAN ANTONIO D/B/A TIFFANY'S CABARET used Plaintiffs' Images, and created the false impression that they worked at or endorsed Tiffany's Cabaret in order to receive certain benefits therefrom, including but not limited to: monetary payments;

increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

34.     As Tiffany's Cabaret was at all times aware, at no point have Plaintiffs ever been affiliated with or employed by Tiffany's Cabaret, and at no point have Plaintiffs ever endorsed Tiffany's Cabaret.

35.     All of Tiffany's Cabaret's activities, including its misappropriation of Plaintiffs' Images, and publication of them, were done without the knowledge or consent of Plaintiffs, and Tiffany's Cabaret did not compensate Plaintiffs for its use of their Images.

36.     As such, Plaintiffs have never received any benefit for Tiffany's Cabaret's use of their Images.

***Standard Business Practices in the Modeling Industry***

37.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

38.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the Image are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

*Defendant's Misappropriation of Plaintiffs' Images*

39.     As detailed above, Defendant knowingly, and without the prior consent of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Tiffany's Cabaret, by and through the use of internet posts, social media posts, and the creation and distribution of collateral materials such as flyers, posters, and cards.

40.     Defendant showcased Plaintiffs' Images on Tiffany's Cabaret materials in order to create the false impression that Plaintiffs worked at Tiffany's Cabaret, or endorsed the club.

41.     Defendant did so in order to attract clientele to Tiffany's Cabaret, promote Tiffany's Cabaret, and thereby generate revenue for Defendant.

42.     Defendant were aware that, by using Plaintiffs' Image, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Tiffany's Cabaret.

43.     Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their reputation, character, and current career.  This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendant's use of Plaintiffs' Images is that she is a stripper working in a sexually-oriented business.

44.     At no point was Plaintiffs ever affiliated with Tiffany's Cabaret or Defendant.

45.     Plaintiffs' Images were used without their consent.

46.     At no point were Plaintiffs ever contacted by Defendant, or any representative of any of the Defendant, to request the use of Plaintiffs' Images.

47.     No Defendant ever obtained, either directly or indirectly, permission to use Plaintiffs' Images.

48.     No Defendant ever paid any Plaintiffs for use of their Images on any promotional materials, including Tiffany's Cabaret billboards, social media, Internet, or other promotional materials.

49.     Defendant used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive the Plaintiffs of their right to determine the use their Images.

50.     Upon information and belief, Defendant have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

### FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq*.:**
**False Endorsement)**

51.      Plaintiffs hereby repeat and re-allege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

52.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendant, and protect Plaintiffs from the conduct described herein.

53.     Defendant used Plaintiffs' Image, *inter alia*, in order to create the false impression with the public that Plaintiffs either worked at Tiffany's Cabaret as strippers, or endorsed the sexually-oriented business.

54.     This was done to promote and attract clientele to Tiffany's Cabaret, and thereby generate revenue for the Defendant.

55.     Thus, this was done in furtherance of Defendant's commercial benefit.

56.     Despite the fact that Defendant were at all times aware that the Plaintiffs neither worked at, nor endorsed, Tiffany's Cabaret, Defendant nevertheless used Plaintiffs' Images in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with

Tiffany's Cabaret.

57.     Defendant knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Tiffany's Cabaret.

58.     Upon information and belief, Defendant's use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Tiffany's Cabaret, and the goods and services provided by Tiffany's Cabaret.

59.     Due to Defendant's unauthorized use of Plaintiffs' Images  in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial, but in all events, not less than seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## SECOND CAUSE OF ACTION
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

60.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Plaintiffs from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

61.     Defendant used Plaintiffs' images, likenesses and/or identities as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Tiffany's Cabaret, endorsed Defendant's business and activities, and/or consented to or authorized Defendant to use their Images in order to advertise, promote, and market Defendant's business, Tiffany's Cabaret, and/or Tiffany's Cabaret's events and activities.

62.     Defendant's use of Plaintiffs' images, likenesses and/or identities to advertise, promote and market Defendant's business, Tiffany's Cabaret, and/or Tiffany's Cabaret's events

and activities as described in this Complaint was false and misleading.

63.     Defendant's unauthorized use of Plaintiffs' images, likenesses and/or identities as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or was otherwise affiliated with Tiffany's Cabaret, endorsed Defendant's business, Tiffany's Cabaret or Tiffany's Cabaret's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant business or Tiffany's Cabaret's events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

64.     Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Tiffany's Cabaret, as to the general quality of attendees and participants of Tiffany's Cabaret and in its events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Tiffany's Cabaret, endorsed Defendant's business, Tiffany's Cabaret or Tiffany's Cabaret's events or activities, or consented to or authorized Defendant's usage of their images in order to advertise, promote, and market Defendant's business or Tiffany's Cabaret's events and activities.

65.     Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or were otherwise affiliated with Tiffany's Cabaret, endorsed Defendant's business, Tiffany's Cabaret or Tiffany's Cabaret's events and activities, or consented to or authorized Defendant's usage of their Images in order to advertise, promote, and market Defendant's business or Tiffany's Cabaret's events and activities.

66.     Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Tiffany's Cabaret, visit

Tiffany's Cabaret, and participate in events at Tiffany's Cabaret and had a material effect and impact on the decision of members and prospective members and participants to join Tiffany's Cabaret, visit Tiffany's Cabaret and take part in the events at Tiffany's Cabaret.

67.     Defendant's advertisements, promotions and marketing of Tiffany's Cabaret and events at Tiffany's Cabaret occur in and are targeted to interstate commerce.  Specifically, Defendant promotes its business and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally uses the World Wide Web, social media, and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Tiffany's Cabaret events.

68.     Defendant's unauthorized use of Plaintiffs' images, likenesses and/or identities as described herein was designed to benefit Defendant's business interests by, among other things, promoting Tiffany's Cabaret and its activities and attracting clientele to Tiffany's Cabaret.

69.     Defendant knew or should have known that its unauthorized use of Plaintiffs' images, likenesses and/or identities would cause consumer confusion as described in this Complaint.

70.     Defendant's unauthorized use of Plaintiffs' images, likenesses and/or identities as described herein violates 15 U.S.C. §1125(a) and was wrongful.

71.     Defendant's wrongful conduct as described herein was willful.

72.     As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

73.     Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to

Plaintiffs.

74.     The method and manner in which Defendant used the Images of Plaintiffs further evinces that Defendant were aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their Images to advertise Defendant's business.

75.     Defendant has caused irreparable harm to Plaintiffs, their reputations and brands by attributing to Plaintiffs the strip club lifestyle and activities at Tiffany's Cabaret.

76.     Defendant's unauthorized use of Plaintiffs' images, likenesses and/or identities directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

77.     Plaintiffs respectfully request that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### THIRD CAUSE OF ACTION
**(Violation of Texas Right to Privacy)**

78.     Plaintiffs hereby repeat and re-allege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

79.     All Plaintiffs have reviewed the imagery in question and have positively identified themselves as the models depicted in the doctored Internet and social media posts used by Defendant to market and promote Tiffany's Cabaret.  As described more specifically for each Plaintiff above, some of the photographs used to create the strip club advertisements were taken professionally and a release was signed at the time of the photo shoot.  However, no Plaintiff ever released her Right to Privacy, Publicity, or the right to any third party to sell her image to any third-party not a party to the original release without her permission, especially a strip club.

80.     Moreover, if a release was signed, it did not include a release of the Plaintiffs' publicity rights and, in fact, several of the releases specifically stated that Plaintiffs retained their rights to publicity.   The right to a person's image and likeness is not copyrightable and, therefore, Plaintiffs are not asserting copyright claims.

81.     Moreover, as described more specifically for each Plaintiff above, some of the photographs were taken as "selfies" and are therefore fully owned by the individual Plaintiff or they were taken for personal use in an individual Plaintiff's portfolio in order to allow her to market herself to new clients.   In these cases, no release was signed and no copyright interest was asserted.   In these cases, as above, each Plaintiff fully retained her right to publicity and privacy and in no case did any Plaintiff ever agree, nor did any third party hold the right to agree on her behalf, that Defendant could use her image and likeness in order to market, promote, or endorse its strip club.   Based on these rights, Plaintiffs assert the Causes of Action described below.

82.     As set forth herein, Defendant have violated by invading Plaintiffs' privacy, misappropriating their likenesses, and publishing on Tiffany's Cabaret materials the altered Images of Plaintiffs which made it appear as though Plaintiffs were employed at Tiffany's Cabaret, or endorsed the strip club.   Defendant misappropriated the Plaintiffs' Images for the value associated with them and for their own benefit.   All of the images misappropriated by Defendant were republished many times in different formats to substantially different audiences on many occasions.   Each publication is a new violation of Plaintiffs' rights.    The appropriation was neither incidental nor for a newsworthy purpose; rather, the images were misappropriated by Defendant, or third parties acting on their behalf, for their own benefit because of the commercial standing, reputation, and other values associated with the Plaintiffs' Images.

83.     At all relevant times, Tiffany's Cabaret internet, social media, and collateral materials were used by Defendant for advertising and trade purposes.

84.     Tiffany's Cabaret internet, social media, and collateral materials were designed to attract business to Tiffany's Cabaret and generate revenue for Defendant.

85.     Upon information and belief, Defendant's use of Plaintiffs' Images did in fact attract clientele and generate business for Tiffany's Cabaret.

86.     At no point did any Defendant ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Images on Tiffany's Cabaret internet, social media, and collateral materials were or anywhere else.

87.     Defendant were at all relevant times aware that they never received any Plaintiffs permission or consent to use their Images on any website or social media account, or on any other medium in order to promote Tiffany's Cabaret.

88.     At no point did Defendant ever compensate Plaintiffs for its use of their Images.

89.     No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

90.     Due to Defendant's violation of Plaintiffs' rights of privacy and publicity under IRPA, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

91.     In addition, Plaintiffs hereby requests an Order permanently enjoining Defendant from violating Plaintiffs' right to privacy and publicity.

92.     In addition, Plaintiffs hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory

rights to privacy and publicity.

## FOURTH CAUSE OF ACTION
### (Defamation)

93.     Plaintiffs hereby repeat and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

94.     As detailed throughout this Complaint, Defendant has published altered Images of Plaintiffs in order to promote Tiffany's Cabaret to the general public and potential clientele.

95.     Defendant's publication of said Image constitutes a representation that Plaintiffs were either employed at Tiffany's Cabaret, endorsed Tiffany's Cabaret, or that she had some affiliation with Tiffany's Cabaret.

96.     None of these representations were true.

97.     In publishing Plaintiffs' altered Images, it was Defendant's intention to create a false impression to the general public that Plaintiffs were a stripper working at Tiffany's Cabaret, or endorsed the strip club.

98.     Defendant were at least negligent in publishing Plaintiffs' Images  because it knew, or should have known, that Plaintiffs were not employed by Tiffany's Cabaret, had no affiliation with Tiffany's Cabaret, had not consented to the use of her Image, and had not been compensated for the use of her Image.

99.     In the alternative, Defendant published the Image of Plaintiffs with actual malice because it knew that Plaintiffs were not employed by Tiffany's Cabaret, had no affiliation with Tiffany's Cabaret, had not consented to the use of her Image, and had not been compensated for the use of her Image.

100.     Despite Defendant's knowledge and awareness of these facts, it nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for itself.

101.   Defendant's publication of Plaintiffs' Images  constitutes defamation under Illinois law because said publication falsely accuses Plaintiffs of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiffs to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiffs of confidence and friendly intercourse in society.

102.   Defendant's publication of Plaintiffs' Images likewise constitutes defamation *per se* under Texas law because said publication would tend to injure each Plaintiffs in her trade, business, and profession.

103.   This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendant's publication of the Image support.

104.   Defendant's publication of Plaintiffs' Images likewise constitutes defamation *per se* under Illinois law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to them.

105.   Defendant's publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive and exemplary damages.

## FIFTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

106.   Plaintiffs hereby repeat and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

107.   Upon information and belief, Defendant were negligent in their failure to

promulgate policies and procedures concerning the misappropriation of the Image of models that were used on Tiffany's Cabaret Website and social media accounts.

108.    Said failure was the proximate cause of the harm Plaintiffs suffered when their Images were published without their authorization.

109.    In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

110.    In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

111.    Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

112.    As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## **DEMAND FOR JURY TRIAL**

113.    Plaintiffs demand a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), relating to Plaintiffs' first through fifth causes

of action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote the Club;

(c) For punitive damages, in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.


Dated: Helotes, Texas
          August 31, 2018


                                      Respectfully submitted,

                                      **The Casas Law Firm, P.C.**

                                      11844 Bandera Road #509
                                      Helotes, Texas 78023
                                      (512) 806-7699 Office
                                      (855) 220-9626 Fax
                                      joseph@casaslawfirm.com
                                      dennis@casaslawfirm.com


                                      _____
                                      Joseph N. Casas*
                                      California Bar No. 225800
                                      Dennis C. Postiglione*
                                      State Bar No. 24041711

                                      **ATTORNEYS FOR PLAINTIFFS**


*Pro Hac Admission for Mr. Postiglione is pending
 Mr. Casas is admitted in the Western District of Texas

- 22 -